Janelle **BOHRER, a minor child, By and Through Joelene BOHRER and Keith Bohrer, her parents, natural guardians and next friends; and Joelene Bohrer and Keith Bohrer, individually, and as Personal Representatives of the Estate of Janelle Bohrer,**

v.

**MERRILL–DOW PHARMACEUTICAL, INC. (formerly Richardson–Merrell, Inc.), a Delaware Corporation.**

**Civ. No. A1–85–056.**

United States District Court,
D. North Dakota,
Southwestern Division.

Jan. 7, 1987.

Sarah Andrews Herman, Fargo, N.D., for plaintiffs.

Steven A. Storslee, Bismarck, N.D., Frank C. Woodside III, and Kathleen D. Patterson, Cincinnati, Ohio, for defendant.

## MEMORANDUM AND ORDER

CONMY, Chief Judge.

Janelle Bohrer was born on December 27, 1982 with significant birth defects. She died on March 23, 1984. Plaintiffs allege that Janelle's defects, and subsequent death, were caused by Bendectin, a drug

prescribed and ingested during her mother, Joelene Bohrer's, pregnancy. Defendant manufactured Bendectin.

Defendant moves this court for an Order compelling plaintiffs to execute certain authorizations permitting treating physicians to participate in ex parte interviews with defendant. Defendant asserts that plaintiff's medical records are not privileged since plaintiffs waived their physician-patient privilege by filing this lawsuit. Therefore, defendant argues that plaintiffs can be compelled to authorize ex parte communications with treating physicians.

Plaintiffs argue that the issue is not physician-plaintiff privilege, but rather whether this court should overturn established custom and practice: that is, that opposing counsel cannot engage in ex parte communications with treating physicians unless it is in the context of formal discovery.

A district court has "very wide" discretion in its resolution of discovery matters and will generally not be reversed unless " 'in the totality of the circumstances the court's rulings are a gross abuse of discretion resulting in fundamental unfairness.' " *Dabney v. Montgomery Ward & Co.*, 761 F.2d 494, 498 (8th Cir.1985) (*quoting Phil Crowley Steel Corp. v. Macomber, Inc.*, 601 F.2d 342, 344 (8th Cir.1979)), *cert. denied*, 474 U.S. 904, 106 S.Ct. 233, 88 L.Ed. 2d 232 (1986).

This court has previously disapproved informal ex parte communications between plaintiff's treating physicians and defendant. *Weaver v. Mann*, 90 F.R.D. 443, 444 (N.D.1981).

> The federal rules provide several avenues by which discovery of examining physicians may be obtained. If the physician is expected to be called as an expert witness, certain information can be obtained by way of interrogatories pursuant to Rule 26(b)(4)(A). If the plaintiff submits to an adverse medical examination under Rule 35 and the plaintiff requests a copy of the examination results defendant is then entitled to receive medical reports of plaintiff's examining physicians. Furthermore, as provided in Rule 35(b)(3), a deposition can be taken

of a physician. However, it appears that the practice of engaging in private conversations with plaintiff's physicians is not contemplated by the rules, and as plaintiff suggests, could lead to discouraging such physicians from testifying. *See Garner v. Ford Motor Company*, 61 F.R.D. 22 (D. Alaska); *Wenninger v. Muesing*, 307 Minn. 405, 240 N.W.2d 333 (1976).

*Id.* This court ordered defendants to refrain from engaging in private conversations with plaintiff's doctors. *Id.* at 445.

Several competing interests must be balanced in determining whether to permit informal ex parte communications between defense counsel and plaintiff's treating physician. The defendant wants to save the time, expense, and inconvenience of formal discovery that could ultimately prove fruitless. The plaintiff has an interest in having representation and formal structure in all contacts with plaintiff's witnesses. The physician is interested in protecting herself from criticism, misquotes, or subsequent impeachment based on prior informal disclosures.

It appears to this court that the issue, as framed, is meaningless. If this court ordered plaintiffs to execute the authorizations, there is no guarantee that the physicians would agree to informally meet with the defendant. Nothing in the Rules or North Dakota statute currently prevents these physicians from communicating with defendant as to matters that are relevant to the lawsuit without the required authorizations. Rather, it appears that the refusal to communicate is the personal choice of the physician. Even if this court ordered plaintiffs to execute the appropriate authorizations, nothing short of a subpoena could compel the physicians themselves to cooperate with defendant, and then not ex parte.

This court agrees with the reasoning of the United States Magistrate in *Alston v. Greater Southeast Community Hospital*, 107 F.R.D. 35, 38 (D.D.C.1985):

> [I]t would seem a futile act to require the patient to sign the authorization allowing oral interviews, especially if counsel for

the plaintiff can contact the physicians and advise them that notwithstanding the medical authorizations signed by the plaintiff, the doctor has the discretion to decline to be interviewed or to give any oral information except by formal deposition. It is doubted that the Court can "gag" counsel from correctly stating the law to the patient-plaintiff's treating and consulting physicians. Since compelling the plaintiff to provide medical authorizations allowing *ex parte* oral interviews can thus come to naught, and in reality amount to a vain act, and because of the cogent reasons advanced for formal depositions of physicians who have treated a plaintiff or have been consulted in the course of treatment, it is the considered view of this Magistrate that the motion to compel should be denied.

*Id.*

Based on the foregoing, it is the ORDER of this court

THAT DEFENDANT'S MOTION TO COMPEL AUTHORIZATION TO INTERVIEW TREATING PHYSICIANS IS DENIED.